DAVENPORT v. HUDSPETH.

Opinion delivered December 17, 1906.

REFORMATION OF INSTRUMENT—SUFFICIENCY OF PROOF.—To authorize reformation of a deed on account of mistake, the proof of the mistake must be clear, unequivocal and decisive.

Appeal from Marion Chancery Court; *T. H. Humphreys,* Chancellor; affirmed.

### STATEMENT BY THE COURT.

This suit was begun by appellee in the Marion Circuit Court as an action of ejectment.   Appellee set up that he had title and the right to possession of the land in controversy by virtue of a deed from J. F. Hudspeth and his wife, who deraigned title from one Rhea, who obtained patent from the United States Government in 1852.

Appellants answer, admitting possession and setting up title and the right to possession as follows:

That said J. F. Hudspeth was the father of the defendant Sallie Davenport, and that these defendants were living in the

Indian Territory, and said J. F. Hudspeth, being desirous of having the defendants return to this country and live near him in his declining years, and being the owner of the land in controversy, together with other lands adjoining it, for his love and affection for the defendant Sallie Davenport, and to induce her to return to this county, gave her in fee simple absolute the land in controversy, together with the S. E. ¼ of N. E. ¼ and N. ½ of N. E. ¼ of section 1, township 18 N., range 17 W., and the S. ½ of S. E. ¼ of S. E. ¼ of section 36 and S. ½ of S. W. ¼ of S. W. ¼ of section 31, township 19 N., range 16 W., on the 27th day of February, 1894, and that she accepted said lands from her father at the time by her agent, W. T. Davenport, and immediately entered into the possession of the same, on said date, and has held, used, and occupied said lands at all times since they were given to her as above stated, and has so held said lands at all times as her property, and claimed the same as her land openly and notoriously, and held it adversely to J. F. Hudspeth and to everybody else at all times since the 27th day of February, 1894, to the present time.

They further state that said J. F. Hudspeth at all times during his life recognized the defendant, Sallie Davenport, as the owner of the land in controversy.

Appellant filed a separate cross-complaint, which, in addition to the facts alleged and set up in their answer, contained the following:

That on the 9th day of March, 1904, said J. F. Hudspeth made a gift of the tract of land adjoining the land in controversy to the defendant, Jas. Hudspeth, and attempted to convey it in escrow to him, but by mistake of the draftsman the land in controversy was embraced in said escrow deed, and the said J. F. Hudspeth, being unable to read, did not discover said mistake, and did not know that said land was so included in said escrow deed. That sometime before the death of said J. F. Hudspeth he was informed of said mistake, and that said J. F. Hudspeth wanted to correct said mistake and took steps to do so, but was prevented from making said correction by the fraud and misrepresentations of the defendant; said defendant telling said J. F. Hudspeth that he had not made said mistake, and that he had not included the land in controversy in said escrow deed.

That the pretended deed on which said Jas. Hudspeth founds his action in this case was never delivered to him by said J. F. Hudspeth in person or by anyone else by the authority of said J. F. Hudspeth, and that the same is not a deed. That said Jas. Hudspeth procured said escrow to be placed on the records of Marion County without the authority or consent of said J. F. Hudspeth, and that said pretended deed is a cloud on the title of the plaintiff, Sallie Davenport, to the land in controversy, and should be canceled.

They prayed to have the cause transferred to the chancery court, and that the alleged pretended deed of James Hudspeth from J. F. Hudspeth be canceled, and that the title of Sallie Davenport to the land in controversy be quieted, etc.

The cause was transferred to the chancery court, whereupon the appellee filed an answer to the cross complaint, denying all of its allegations.

The court, after hearing the testimony, dismissed the cross-complaint of appellants for want of equity, and granted the relief prayed in appellee's complaint.

*Woods Brothers* and *Frank Pace,* for appellant.

Where a party is put into possession of real estate under a parol gift, and remains in possession of the same for the statutory period, such possession is adverse, and ripens into title, notwithstanding any claim of title that may be set up by the donor after having made the gift; and nothing will arrest the running of the statute except actual possession taken by the donor before the statutory period has elapsed. 30 Ark. 340; 39 Conn. 98; 85 Ky. 666; 93 Ky. 435; 55 Miss. 681; 6 Met. 337; 35 L. R. A. 835.

*G. H. Perry,* for appellee.

To justify a decree in favor of appellants, the proof should be sufficient to warrant a decree for specific performance against J. F. Hudspeth, had he lived and retained title and suit had been brought against him. 63 Ark. 100. If the rights of appellee had not intervened, and if Hudspeth had lived and retained title to the land, still, to overcome the deed from J. F. Hudspeth to Sallie Davenport, the proof must be clear, unequivocal and decisive. 95 U. S. 494; 71 Ark. 614; 75 Ark. 72. A

verbal promise of a parent of a gift to a child, without possession being given, is void and within the statute of frauds. Kirby's Digest, § 3654; 63 Ark. 100. The finding of the chancellor that there was no gift accompanied by possession prior to the conveyance to James Hudspeth will not be disturbed unless clearly against the weight of evidence. 73 Ark. 479; 71 Ark. 105; 68 Ark. 287.

WOOD, J. (after stating the facts.) The questions in the case, as stated by the learned counsel for appellants, are:

"First: Did J. F. Hudspeth give the appellant, Sallie Davenport, the land in controversy? Second, did he place her in possession of said land under a valid gift? Third, if she went into possession of said land under a valid gift, did she hold the same continuously and under claim of ownership under said gift for a period of seven years?"

It would doubtless be interesting to the parties litigant for the court to discuss in detail the evidence bearing upon these questions. But the record is voluminous, and the determination of these issues depends mainly upon questions of fact upon which the evidence in the record is conflicting. It will serve no useful purpose as a precedent to discuss pure questions of fact as they are presented in this case, and therefore we refrain from doing so. This is one of those unfortunate controversies between brother and sister which the courts are sometimes called upon to settle. Witnesses are adduced on each side whose testimony tends to support the respective contentions, but, the chancellor having found in favor of appellee, we think it is a case in which his finding should be very persuasive. It may be said in this case as was said by us in *Meigs* v. *Morris,* 63 Ark. 100: "To justify a decree in favor of appellants, the proof should be sufficient to have warranted a decree for specific performance against J. F. Hudspeth, had he lived and retained the title." The proof should be sufficient to warrant the reformation of the deed of J. F. Hudspeth to Sallie Davenport, so as to make it include the land in controversy.

Appellee relies upon a deed from his ancestor which embraces the land in controversy. Appellants claim that this occurred through a mistake of the draftsman who was instructed to draw a deed containing other lands, and by mistake included

the tract in controversy as well. In *McGuigan* v. *Gaines*, 71 Ark. 614, this court approved the following language by Bishop on Contracts, § 708. The author says: "In no case will the court decree an alteration in the terms of a duly executed written contract, unless the proofs are full, clear and decisive. Mere preponderance of evidence is not enough. The mistake must appear beyond reasonable controversy." Again the court said in *Goerke* v. *Rodgers*, 75 Ark. 72: "It is to avoid such honest misunderstanding, as well as to prevent advantage by unscrupulous parties, that the law requires that the evidence to overcome the written memorial must be clear, unequivocal and decisive." See also *Tillar* v. *Wilson*, 79 Ark. 256, and *Foster* v. *Beidler*, 79 Ark. 418.

We are convinced from a careful consideration of the evidence in this record that the chancellor had in mind the above principles, and correctly applied them by finding and decreeing in favor of appellee.

Affirmed.