## JOHNSON *v.* STEUART.

Opinion delivered February 20, 1911.

1.  REFORMATION OF INSTRUMENTS—SUFFICIENCY OF EVIDENCE.—In order to reform a written instrument for fraud or mistake, the evidence of such fraud or mistake must be clear, unequivocal and decisive. (Page 639.)

2.  HOMESTEAD—SEGREGATION.—Where the owner of 187 acres, upon which he resided, without his wife's concurrence, laid off 20 acres thereof, apart from his residence, as a townsite, and filed a plat, and sold lots according thereto, he will be held to have segregated the 20 acres from his homestead, and to be limited thereafter, in the selection of a homestead, to the remaining 167 acres. (Page 640.)

Appeal from Hempstead Chancery Court; *James D. Shaver,* Chancellor, reversed.

### STATEMENT BY THE COURT.

This suit was by appellant to compel a specific performance of a contract of sale of block 2 in the town of Tokio, Hempstead County, Arkansas.

It was alleged that appellant purchased said block containing lots 1 to 16 for $100, at the time of the purchase paying $25 by check, and on August 10, 1909, paid I. N. Steuart the balance of the purchase money, $75, and got his receipt in full for the purchase money which described the property purchased; that a deed conveying same was demanded, and appellee refused to execute it. Damages were claimed for the removal of some rails, and a prayer for specific performance.

I. N. Steuart denied having sold the appellant the land claimed on March 6, 1909; that he executed a receipt showing what land he purchased; that he executed to appellant on August 10, 1909, a receipt showing what lands he agreed to sell appellant; that he executed the receipt attached as an exhibit to the claim; that the same was his act and deed; that he had refused to execute to appellant a deed to the land which he agreed to sell, and that he had removed any rails therefrom. Stated that he entered into a parol contract on March 6, 1909, with appellant to sell him a tract of land in Tokio, not platted at the time, 300 feet wide by 100 feet long east of Prescott & Northwestern Railway Company's right-of-way and north of Memphis, Paris & Gulf Railway Company's right-of-way for $100, $25 of which was then paid, that when the other $75 was paid in August,

1909, he executed and tendered to appellant a deed conveying the land which he refused to accept.

By way of cross complaint alleged that the land he agreed to sell appellant was part of his homestead, that his wife had not joined in the contract, and that same was void; offered to return the purchase money, and alleged that, honestly believing he had not contracted to sell appellant any other land than as described in his answer, he had in good faith erected a storehouse, of the value of $500, on the land claimed by appellant. Prayed that the contract be declared void, or that he have judgment for the improvement.

Mrs. M. L. Steuart, his wife, filed a motion to be made a party defendant, together with an answer and cross complaint, upon which no formal action was taken. I. N. Steuart set up by amendment to his answer that the contract of sale was not in writing, and pleaded the statute of frauds.

The testimony tended to show that I. N. Steuart, in contemplation of platting and laying out a town or village, on March 6, 1909, agreed to sell Harry Johnson, appellant, "one city block one acre or more" east of the Prescott & N. W. Railway, and north of the Memphis, P. & G. Railway with public road between same and railroads, as recited in his receipt for $25 of the $100 purchase money of that date. That he was a married man, and owned 187 acres of land lying contiguous, upon which his house was established and his farm. That in July, 1909, he laid off and platted about 20 acres of his farm, including the land at the intersection of said railroads, into lots and blocks for the purpose of selling it for town lots, naming it Tokio. That appellant in August went to pay the balance of the purchase money for the land he had agreed to sell him, and Steuart began to talk about his not buying a full block, and a dispute arose as to the description of the land. Appellant insisted that he was entitled to block two as shown on the plat of the town of Tokio, a copy of which he had with him, while Steuart contended that he had only agreed to sell him a strip of land 300 by 100 feet, declared he would make a deed for no more, and refused to take the money. Appellant declared he had bought a city block 300 by 300 feet, and that he would take no less. He then went to his buggy, and returned shortly with his wife to Steuart's store, and said to her

in his presence: "Mr. Steuart has refused to take the balance of the money on this property. Is that right, Mr. Steuart?" And he replied, "Yes, that is right; I refuse." Appellant started away, and Steuart said, "You will have to contest it in the courts." To which he replied, "No, Mr. Steuart, I will go and take possession and let you contest it." Mr. Steuart then agreed to take the money, and he and appellant went into the store.

Appellant testified: "I had that map in my hand, but he got down two of his, and we looked them over, and then I took this piece of paper, and wrote out a receipt according to the map and handed it to him. Mr. Steuart said, 'The receipt looks all right.' And I said, 'I would not ask you to sign it if it was not all right.' He then signed the receipt, and gave it to me, and I handed him the $75 check. We drew the receipt according to the map. Mr. Steuart signed that receipt in my presence right behind the counter in his store. It bears the date that the money was paid." The receipt describes block two as it is shown on the map or plat of Tokio, and is as follows:

"Tokio, August 10, 1909.

"Received $75 in full payment for block No. 2 between Railroad Avenue and Main Street, north and south, and Third Street and Fourth Street, east and west.

"I. N. Steuart."

Steuart testified: "I gave no such receipt for the $75 as is copied as an exhibit to plaintiff's deposition. I remember the substance of the receipt that I did sign and deliver to him at that time. It was: 'Received of Harry Johnson ($75) seventy-five dollars in full payment of one plot of ground, one acre more or less.' My brother, E. J. Steuart, came in while we were talking. I do not know whether he saw the receipt. This land lies near the town of Tokio. There was no town there then. It has not been incorporated. It has three store houses, a depot, law office and two residences.

He stated also that he had a map or blue print of the town at the time, but that he did not have it before him when the last payment was made, and Mr. Johnson was to have the first land in block 2 as described on this map; he was to have a corner when it was surveyed. He did not contend for all of it until he made the last payment. "The reason why I did not at

first receive the money was because plaintiff told me that he expected to get block 2. I told him that I would receipt him for the money paid. I understood that he was contending that he had bought block No. 2 before I receipted him for the money. I refused to accept the money at first."

Several witnesses testified that they heard the conversation between the parties relative to the agreement to sell before the first receipt was given, and that 300 by 100 feet was the size of the tract. Appellant attempted to put a wire fence around the block shortly after paying the balance of the purchase money, · and 50 feet on one corner was not inclosed by the wire. Upon this appellee Steuart later started the erection of a storehouse. Steuart and wife about two weeks after the execution of the last receipt tendered appellant a deed to a portion of the block 300 by 100 feet which he refused to accept, and then offered to return the $100 with interest, which was also declined. Both receipts, the first of which was admitted to have been given by Steuart, and both checks in payment, with the indorsements, were introduced in evidence, and he denied having signed only the last receipt, and they have been brought up and exhibited to this court.

The chancellor found that Steuart sold appellant a lot 300 by 100 between the railroads, that it was a part of his homestead, that it was platted before the last payment of purchase money, that the agreement was parol, not joined in by his wife and void, and appellant was not entitled to specific performance of it. But, since appellees had executed and offered to deliver to appellant a deed to this 300 by 100 feet tract, specific performance was decreed as to that, and each party adjudged to pay half the costs. From this judgment appellant brings this appeal.

*Sain & Sain* and *T. D. Crawford,* for appellant.

1. Having signed a writing which witnessed the sale of a city block at the intersection of two certain railroads, appellee will not be permitted to make claim to the contrary, nor to complain that he was mistaken as to its terms. 70 Ark. 512; 71 Ark. 185. A block in a city or town usually means a square, one side of which is 300 feet in length.

2. The contract to convey a part of appellee's homestead was not void as within the act of March 17, 1887. He owned 187 acres in a body, out of which he could have selected 160 for

ARK.] JOHNSON v. STEUART. 639

a rural homestead, but he chose to plat and dedicate 20 acres thereof for a townsite, and it was not necessary that his wife should have joined in the dedication. The effect of this dedication was to abandon this part of his land as a homestead. The husband can abandon a homestead, and the wife is bound by it. 68 Ark. 76; 58 Ark. 124; 37 Ark. 304; 43 Ill. 174; 14 Cal. 506; 10 Ia. 51; 45 Miss. 263, 276; 96 S. W. 650; 109 S. W. 966. A rural homestead may be charged into an urban homestead, but thereupon that portion of the rural homestead which is not within the town, or which is not actually used for homestead purposes, loses its homestead character. 111 Tex. 1079; 38 Tex. 421. If land is urban in fact, it is immaterial that it has not been platted into lots and blocks. 61 Minn. 170; 52 Am. St. 592; 5 Kan. 592.

*W. P. Feazel*, for appellees.

1. If the court should find that appellee agreed to sell to appellant a "city block" as described in the receipts and set out in the complaint, still appellant would not be entitled to enforce a specific performance of the contract, because the town in which the block is situated is omitted from the description in both receipts. 85 Ark. 3.

2. The contract to convey the land was void under the act of March 18, 1887, because it was a part of appellee's homestead, and his wife did not join therein. 64 Ark. 7; 124 Cal. 59; 52 Pac. 127; 57 Ark. 242; 76 Ia. 567; 60 Wis. 377; 62 Miss. 195; 12 Am. St. Rep. 681; 15 *Id.* 47; 9 Ia. 60; 20 Mich. 369; 33 Kan. 53; 55 Minn. 244; 68 Ark. 79.

KIRBY, J., (after stating the facts). The court treated the action as one for specific performance of the contract for the sale of block number two, as evidenced by the receipt for the remainder of the purchase money, describing it, and the answer and cross complaint as asking a reformation thereof because of a mistake in the description of the land or fraud of the vendee in procuring it; and in effect decreed a reformation and specific performance of the contract as reformed.

A preponderance of the evidence is not sufficient to warrant the reformation of such a contract, for, as was said in *Wilson-Ward Co.* v. *Farmers' Union Gin Co.,* 94 Ark. 200: "This court has decided in an unbroken line of cases that, in order to reform

a written instrument, the evidence must be 'clear, unequivocal and decisive.' " *McGuigan* v. *Gaines,* 71 Ark. 614; *Goerke* v. *Rodgers,* 75 Ark. 72; *Tillar* v. *Wilson,* 79 Ark. 256; *Davenport* v. *Hudspeth,* 81 Ark. 166; *Marquette Timber Co.* v. *C. T. Abeles Co.,* 81 Ark. 420; *Mitchell Mfg. Co.* v. *Kempner,* 82 Ark. 349; *Turner* v. *Todd,* 85 Ark. 62; *Cherry* v. *Brizzolara,* 89 Ark. 309. This court has in several of the above cited cases approved the statement of the rule of evidence on this subject by Mr. Bishop in his work on Contracts, § 708: "In no case will a court decree an alteration in the terms of a duly executed written contract unless the proofs are full, clear and decisive. Mere preponderance of the evidence is not enough; the mistake must appear beyond reasonable controversy."

The receipt for the first payment signed by appellee, I. N. Steuart, showed an agreement to sell to appellant a tract of land, situated betweet the two railroads north of one and east of the other, in extent "a city block containing one acre or more," and after the lands were laid off and platted the receipt for the remainder of the purchase money showed a concluded sale of that date to him of block 2 in the town of Tokio, definitely described with the names of the streets surrounding it as shown on the plat thereof.

It is true he denies having signed this receipt, but appellant testified that he did sign it, and he admits having signed a receipt at the time, written by appellant, after first refusing to take the money and a heated controversy with him as to the amount and description of the land sold, appellant all the time insisting that he was entitled to said block 2. It is not within the range of probability that appellant would have written a receipt, with the recitals in it as claimed by appellee, under the circumstances. It is before us with the undisputed signature of appellee, and it has no appearance of any changes by erasures or otherwise, and we are convinced that he did sign it, and that he is now mistaken in his statement of its recitals. The evidence was not sufficient to justify the decree reforming the contract.

Was the contract of sale of this land void under the act of March 18, 1887, because of the failure of appellee's wife to join in it?

Appellee had 187 acres of land upon which he had established

his home and resided with his family, and was entitled to select no more than 160 acres of it as a homestead. He could select his homestead without the consent or concurrence of his wife, and, having laid off and platted 20 acres of his farm as lots and blocks with the intention of selling it as town lots and having sold some of them with reference to the plat dedicating the streets, filed and recorded as the law requires, he thereby excluded same from his right to select it as a homestead, and was thereafter limited to the lands not platted and sold to others and the 167 acres remaining which was more than he could claim in any event. It may be that three storehouses, a depot, law office and two residences with no incorporation would not constitute this platted land a town or village within the meaning of the Constitution limiting a homestead in a town or village to one acre and preclude the appellee, if he resides within its boundaries, from claiming more than that as a homestead, but that question is not before the court as it was in the case of *Clements* v. *Crawford Co. Bank,* 64 Ark. 7.

It is contended, however, that the contract of sale was executed before the land was platted, but the first agreement at most was but one to sell while there was in fact a sale made on August 10, 1910, after the town was platted and the block of land sold was described in accordance with the said plat. If the first agreement was void because of the failure of his wife to join in it, it was only executory, and would not have prevented appellee from making the sale he did make on the date after the filing of the plat nor from his allowance of credit as part of the purchase price the money he had already received on the void contract conceding it to be so. We hold that his sale of said block of land on August 10 was a sale of that date which he could make, and his receipt, showing payment of all the purchase money and the description of the land sold, was evidence of a binding contract of which appellant can have and is entitled to specific performance.

The decree is reversed, and this cause remanded with directions to enter a decree in accordance with this opinion.